# First Evangelical Lutheran Church *v.* Gardner, Appellant.

*Contract—Subscription to church building fund—Evidence.*

In an action by an incorporated church to recover the amount of a sub-
scription to the church building fund, it appeared that the defendant sub-
scribed under a resolution which provided that "three-fourths of the proba-
ble costs of the completed building be raised by a subscription to be paid
in installments covering a period not longer than three years." No mention
was made in the resolution of the cost of the church. When $34,000 was
subscribed a contract was entered into for the construction of a building to
cost $45,000. Subsequently, owing to a rise in building materials and labor,
and change of plans, the cost was increased to an amount much greater
than that stated in the contract; but additional subscriptions were secured,
so that the fund subscribed was always at least equal to three-fourths of
the final cost of the building. The additional subscriptions, however, were
not all payable within the three years in which the original subscriptions
were payable. Defendant claimed that he was relieved from liability be-
cause (1) the later subscriptions could not be added to the earlier ones
to make three-fourths provided by the resolution; and (2) the later sub-
scriptions were not payable within the original three years. *Held*, that
the defendant's contention was unfounded, and that a judgment against
him should be sustained.

In the above case it was proper for the court to overrule an offer to show
that the pastor of the church made a statement in regard to the meaning
and intent of the resolution before its adoption, and what his understanding
thereof was.

Argued March 14, 1905.    Appeal, No. 10, March T., 1905,

by defendant, from judgment of C. P. Cumberland Co., Nov. T., 1903, No. 33, on verdict for plaintiff in case of The First Evangelical Lutheran Church of the Borough of Carlisle v. John H. Gardner. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and HENDERSON, JJ. Affirmed.

Assumpsit to recover the amount of a subscription to a church building fund. Before E. W. BIDDLE, P. J.

When the defendant was on the stand the following offer was made :

We propose to prove by the witness on the stand that prior to the adoption of the resolution which has been offered in evidence of December 14, 1898, Mr. Wile called at the place of business of the defendant, and stated to him that he desired to erect a new Lutheran church in Carlisle, and said that if he could secure sufficient encouragement from among his friends he would call a congregational meeting of the church for the purpose of deciding upon the advisability of erecting this church; that after some discussion Mr. Gardner promised to give $1,000 toward that end, the subscription to be conditioned on the action which should be taken by the congregational meeting which Mr. Wile at that time said he would call, and this was the only subscription Mr. Gardner ever made and the only time he ever made such subscription; the purpose being to show the conditions of the contract as the defendant contends the contract was made.

Mr. Beltzhoover: The offer is objected to, first, because the corporate action of the plaintiff was fixed and settled and decided upon by the resolution of December 14, 1898, and the offer is to show that his subscription was to be predicated upon the congregational action of that date; therefore, it would be incompetent to in any way contradict, or vary, or alter that action.

Second. The resolution of December 14, 1898, being the corporate action of the church, cannot be explained or contradicted or altered or varied in any way by parol testimony; and what any one of the incorporators or members of the church may have understood from anything said before or after the introduction of said action would be irrelevant and incompetent.

Third.   The proposed evidence is irrelevant, incompetent and inadmissible.

The Court: The objections are sustained, and an exception noted for defendant.   [11]

When John W. Plank was on the stand the following offer was made:

Mr. Hambleton: We propose to prove by the witness that prior to the adoption of this resolution of December 14, 1898, Mr. Wile, the pastor of the church, was requested to state the meaning and intent of the resolution, and he then and there stated that the cost of the church would not exceed the sum of $45,000, and that would include the cost of erecting the church and parsonage, and that by reason of these statements on the part of Mr. Wile, the congregation was induced to pass the resolution ; this for the purpose of showing the contract as stated by the plaintiff is not in accordance with the action taken by the church or congregation.

Mr. Beltzhoover: This offer is objected to for the reason that under the law the contract and action of the congregation being in writing cannot be contradicted or altered or varied in any way by parol.

Second.   The evidence is incompetent and irrelevant generally.   The resolution itself of that date having been adopted after Mr. Wile's remarks, therefore not only in law but in fact is presumed to include the action of the congregation after having heard Mr. Wile, and the terms of the resolution enacted must be taken as embodying everything that occurred.

Mr. Vale: A further objection is, that this defendant in several affidavits has admitted that the subscription was given prior to the passage of said resolution and conditioned on the action to be taken, and this is objected to because it is an attempt to alter or change the terms of that resolution which cannot be done in the absence of accident, fraud or mistake in the passage of same.

The Court: The contract in this case is tri-lateral ; the First Lutheran Church being one party, the defendant a second party, and each of the other subscribers parties of the third part.   It does not appear that all of these subscribers were present at that congregational meeting, and the proposed testimony is therefore inadmissible to affect the rights of other

parties, peculiarly as the action of the congregation appears by a written resolution which has been put in evidence, and which was the basis of subsequent resolutions by the church council which have also been put in evidence. The objections are therefore sustained and an exception noted for defendant. [12]

Defendant presented these points:

1. It appears from the uncontradicted evidence of the plaintiff in this case that three fourths of the cost of the completed church buildings erected by the plaintiff corporation under the resolution of December 14, 1898, was not subscribed conditioned to be paid within three years before the erection of said buildings were commenced, and therefore the verdict should be for the defendant. *Answer :* Refused. [3]

2. It appears from the uncontradicted evidence of the plaintiff that three fourths of the cost on the completed church buildings erected by the plaintiff corporation under the resolution of December 14, 1898, was not subscribed conditioned to be paid within the three years ending April 1, 1902, at the time of the completion and dedication of said buildings, and therefore the verdict should be for the defendant. *Answer :* Refused. [4]

3. The three years allowed for the payment of the sums subscribed under the resolution of December 14, 1898, including the defendant's subscription, expired on April 1, 1802. *Answer :* This is true as to the subscriptions made prior to September 14, 1899. It is not true as to later subscriptions, a number of which were made for the purpose of paying for the church building. All of the foregoing, whether made prior to or after September 14, 1899, were to carry out the intent of the resolution of December 14, 1898. [5]

4. In ascertaining the cost of the completed church buildings erected by the plaintiff under the resolution of December 14, 1898, there must be added to the sum paid to James Porter, the contractor, the sums expended by the plaintiff for terra cotta, heating apparatus, electric lighting apparatus, windows, architect's commissions, plumbing, interest on money borrowed and cost of furnishing basement. *Answer :* This point is immaterial under the evidence in the case. [6]

5. The sums subscribed on November 10, 1901, conditioned to be paid within three years from that date, cannot be added

to the amount subscribed under the resolution of December 14, 1898, to make the necessary amount of subscriptions required under the resolution of December 14, 1898. *Answer:* The subscriptions which were announced at the dedication of the church on November 10, 1901, are to be considered in connection with other prior subscriptions made to the church for the erection of a new building. [7]

6. Under the terms of the resolution of December 14, 1898, the cost of the church buildings to be erected by the plaintiff corporation was limited to a sum which was to be fixed by dividing by three the sum subscribed for that purpose before their erection was commenced, and then multiplying the result by four, and if the jury find that the said buildings when completed, cost more than the sum so to be ascertained, and that the defendant did not consent to said increased cost, their verdict should be for the defendant. *Answer:* Refused. [8]

7. Under all the evidence the verdict should be for the defendant. *Answer:* Refused. [9]

Verdict and judgment for plaintiff for $748.65. Defendant appealed.

*Errors assigned* were (3–9) above instruction, quoting them; and (11, 12) rulings on evidence, quoting the bill of exceptions.

*Conrad Hambleton*, with him *John W. Wetzel*, for appellant. —The conditions of the subscription were not complied with : First M. E. Church v. Sweny, 52 N. W. Repr. 546.

Covenants, like other contracts, are to be construed according to the intentions of the parties as nearly as the words will permit, and there is no surer guide to the understanding and intention of the parties when words are equivocal, than their acts and declarations under the agreements called commonly its contemporaneous construction : Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429 ; Miner's Appeal, 61 Pa. 283 ; Gillespie v. Iseman, 210 Pa. 1.

Where the condition or a material part thereof is not complied with the subscription, if unpaid, cannot be enforced, and if paid can be recovered back, with interest, from the date of payment: Rothenberger v. Glick, 52 N. E. Repr. 811; Auburn Bolt & Nut Works v. Shultz, 143 Pa. 256 ; Garard v. Monon-

gahela College, 114 Pa. 337 ; North Ecc'l Society v. Matson, 36 Conn. 26 ; Felt v. Davis, 48 Vt. 506 ; Reimensnyder v. Gans, 110 Pa. 17.

*F. E. Beltzhoover*, with him *Thos. E. Vale*, for appellee.— The consideration in the cases relating to charitable subscriptions is the work done and liability incurred by the promisee on the faith of the promise made, or where other subscribers were induced by reason of his subscription to subscribe, and the contract may be said to be operation by way of estoppel: Ryerss v. Presbyterian Congregation, 33 Pa. 114 ; Edinboro Academy v. Robinson, 37 Pa. 210 ; Shober v. Lancaster County Park Association, 68 Pa. 429 ; Chambers v. Calhoun, 18 Pa. 13 ; Reimensnyder v. Gans, 110 Pa. 17 ; Lippincott's Est., 21 Pa. Superior Ct. 214 ; Cravens v. Eagle Cotton Mills Co., 120 Ind. 6 (21 N. E. Repr. 981) ; Current v. Fulton, 10 Ind. App. 617 (38 N. E. Repr. 419) ; Rogers v. Galloway Female College, 39 L. R. A. 636 ; Richelieu Hotel Co. v. International Military Encampment Company, 140 Ill. 248 (29 N. E. Repr. 1044) ; Cottage Hospital v. Merrill, 92 Iowa, 649 (61 N. W. Repr. 490) ; School Dist. v. Sheidley, 138 Mo. 672 (40 S. W. Repr. 656) ; Trustees of Inst. v. Haskell, 73 Me. 140 ; Petty v. Trustees of Church, 95 Ind. 278.

A conditional subscription will not be avoided by a change of plan which involves the expenditure of more money than originally provided for when the subscriber is not injured thereby : Gray v. Monongahela Nav. Co., 2 W. & S. 156 ; Cross v. Peach Bottom Ry. Co., 90 Pa. 392 ; Clark v. Monongahela Nav. Co., 10 Watts, 364 ; Everhart v. West Chester, etc., R. R. Co., 28 Pa. 339 ; Cass v. Pittsburg, etc., Ry. Co., 80 Pa. 31 ; Cook on Stocks & Stockholders, sec. 188.

The defendant was not injured by the additional expenditure made to pay for the increased cost of materials, for the necessary change of plans to meet the requirements of building, for the beautifying and adorning the buildings and for the furnishings and fixtures placed therein. He cannot have been injured, for he is under no obligation, legally or morally, to pay for the increase of cost. The security and financial standing of the church has not been endangered by the increased expenditure, and there is no complaint on that account.

OPINION BY BEAVER, J., April 17, 1905:

The defendant admittedly subscribed the sum of $1,000 for the erection of a church and parsonage for the use of the plaintiff, under conditions set forth in a resolution passed at a congregational meeting December 14, 1898, as follows : " That to bring this matter before this meeting, I move that the officers of the church be instructed to secure the property at the southeast corner of Main and Bedford streets for the building of a new church, and that they proceed as soon as advisable to erect buildings thereon, provided that three fourths of the probable cost of the completed building be raised by subscriptions, to be paid in installments covering a period not longer than three years."

In accordance with the resolution, a contract was made with a responsible bidder who gave bond for the faithful performance of the contract for the erection of church and parsonage, for the sum of $45,000. At the time the contract was made, subscriptions toward the erection of the said building or buildings to the amount of $34,000 were in hand.

There is some difference in the testimony as to whether the subscription of the defendant was made prior or subsequent to the adoption of this resolution by the congregation, but, if made prior thereto, as we understand the offer of the defendant, the conditions were to be in no respect different from those actually adopted at the meeting.

Subsequently to the adoption of the plans and specifications and the execution of the contract with the builder, by reason of a rise in building materials and labor, the church building cost more than the original contract. The plan for the tower was also somewhat changed, increasing the expense. Stained glass windows were substituted for plain ones. The heating apparatus, the wiring and fixtures for electric lighting, the pews and other furniture, the carpets and organ were also added, largely increasing the amount expended in the erection and furnishing of the church but, notwithstanding all those facts, it is clearly apparent that, by the additional subscriptions prior to and at the dedication of the church, November 10, 1901, the conditions upon which the defendant made his subscription were all substantially complied with. It is evident from the terms of the resolution that the exact amount of

the cost of the church building was not intended to be definitely fixed. Three fourths of the probable cost of the completed building was to be raised by subscriptions. Not only the probable but the actual cost was fixed in the way in which that could be most definitely ascertained, by a contract in writing with a reliable builder. There is no allegation that this contract was not made in good faith.

It appears further by the testimony that, when the plan for the tower was restored as originally designed by the architect, additional subscriptions were made. At the time of the dedication, in view of the greatly increased cost of the building and the additional cost of heating, lighting and furnishing, some $23,000 were subscribed, so that subscriptions to the amount of three fourths of the entire cost of the building, as planned and as finally built and furnished, were made.

It also appears from the evidence that the defendant's subscription to the building was one of the first made, and that others were induced to subscribe by reason of his subscription and the prospect which it held out of the ability of the church to carry to completion an enterprise as to which some of the members had doubt.

After the subscription was made, the plaintiff paid the one-third part of $1,000 and took a receipt from the treasurer, showing the payment of that amount as the one third of his subscription.

At the time of the subscription of the defendant it is not alleged that any plans had been adopted or any obligations of any kind incurred. When, therefore, the contract was signed, not only the liability of the plaintiff to the contractor but the liability of the defendant to the plaintiff became fixed. Not only were the $34,000, which was more than three fourths of the actual contract cost of the completed building, subscribed, but it was all to be paid within the period prescribed in the resolution, so that all the conditions of the resolution adopted at the congregational meeting were fully met before any work was commenced.

The defendant alleges, and asked the court to charge, that all subsequent subscriptions were to be payable within the three years prescribed in the conditions of the resolution as originally adopted by the congregational meeting, but we do

not so construe that clause of the resolution. The subscriptions made at that time and immediately following, under the terms of that resolution, were undoubtedly so payable, but those which were subsequently made were to be paid in accordance with the conditions attached thereto and, if those conditions were that they were to be payable within three years from their date, the defendant was in no way injured thereby, and his own subscription could only be affected by the terms imposed by the resolution of the congregational meeting which governed his and all other subscriptions made at that time under its provisions.

The defendant offered to prove that his subscription was made before the congregational meeting at which the original resolution was adopted and was conditioned on the action which should be taken by that meeting, but he does not allege that the conditions to be prescribed at the congregational meeting were different from those which were actually adopted, and whether the subscription was, therefore, made before or after the congregational meeting was wholly immaterial. This offer, and also that offering to show that the pastor of the church made a statement in regard to the meaning and intent of the resolution before its adoption, and what his understanding thereof was, which was also immaterial, were properly rejected. What the pastor understood the resolution to mean was not the question. It was adopted by an overwhelming majority of the congregation and its meaning is to be determined from its language as adopted.

Viewing the case in the light of all the testimony, we see no substantial or reversible error in the answers of the plaintiff's and defendant's points for charge and the general direction of the court to find for the plaintiff.

Judgment affirmed.